[No. D049923. Fourth Dist., Div. One. July 17, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAUN THOMAS TURK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.C., D. and E.

## COUNSEL

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, David Delgado-Rucci and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**AARON, J.—**

I.

## INTRODUCTION

A jury found Shaun Thomas Turk not guilty of first degree murder, and guilty of second degree murder (Pen. Code, § 187, subd. (a)).[1] The jury further found that in the commission of the offense, Turk personally used a deadly and dangerous weapon, i.e., a knife, within the meaning of section 12022, subdivision (b)(1). The trial court sentenced Turk to a total term of 16 years to life in prison, including a sentence of 15 years to life on the second degree murder conviction and an additional one-year term for the section 12022, subdivision (b)(1) enhancement.[2]

On appeal, Turk claims that the trial court erred in failing to instruct the jury sua sponte regarding involuntary manslaughter stemming from voluntary intoxication, instructing the jury pursuant to CALCRIM No. 625 regarding voluntary intoxication, failing to instruct the jury regarding voluntary manslaughter based on imperfect and perfect self-defense, precluding defense counsel from asking a witness why the witness did not believe that Turk had stabbed the victim, and in admitting hearsay testimony regarding inculpatory statements that Turk made shortly after the killing.

We affirm the judgment.

II.

## FACTUAL BACKGROUND

A. *The prosecution's evidence*

In November 2004, Nicholas Cole (Nicholas), one of Turk's friends, hosted a party. Paul Howell, the victim of the killing at issue in this appeal, attended

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2] The People concede that the 15-year-to-life sentence for Turk's second degree murder conviction, as set forth in the court's sentencing minute order and in the abstract of judgment, is correct and must prevail over an incorrect reference to a sentence of 25 years to life contained in the reporter's transcript. We agree with the concession. (§ 190, subd. (a) [except for circumstances not present in this case, "every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life"].) In accordance with Turk's request, we declare that the abstract of judgment states Turk's legal sentence.

the party. Thomas Hodgins, another friend of Turk's, instigated a fight with Howell at the party. Hodgins sustained injuries from the fight.

On December 3, 2004, Turk, along with several other friends, including Joshua Young[3] and Nicholas, attended a party at a house on Louis Lane in Santee. Howell also attended the Louis Lane party. Sometime prior to 12:30 a.m., Turk asked to borrow Nicholas's knife. Nicholas gave Turk his knife.

At some point later in the evening, Turk dropped a beer in front of Howell, called Howell a derogatory name, and insisted that Howell pick up the beer. Howell refused to pick up the beer and indicated that he did not want to fight. Turk and Howell began to yell at each other. Someone said, "Go outside, take it outside."

Howell and Turk went to the backyard of the residence and began to punch each other. A crowd of people formed around them. Various people intervened in the fight. Additional fights broke out around the yard while Turk and Howell were fighting. After a lull in the fight, Turk and Howell resumed fighting near the fence at the back of the yard. Turk stabbed Howell numerous times with Nicholas's knife. Howell died from the stab wounds.

While leaving the party, Young told Turk, "We got to go. We stabbed him." Turk stated, "I got him six times." Turk and Young were covered in blood when they left the party.

After the stabbing, Nicholas's brother, Chris Cole (Chris), gave Turk and Young a ride from the Louis Lane party to Turk's house in Chris's truck. Turk bragged about the stabbing during the ride. Shortly after arriving at Turk's house, Young took Nicholas's knife from Turk and placed Young's and Turk's clothes in a bag. Young then drove to a pond and threw the knife in the pond. He drove to another location and burned the clothes.[4]

The next day, Turk told Nicholas that he had stabbed Howell in the stomach during the fight. Turk demonstrated to Nicholas the manner in which he had stabbed Howell. Nicholas stated that he believed Turk said he had stabbed Howell eight times.

B. *The defense*

Turk's sister, Candace Woolwine, testified that Turk appeared to be intoxicated when he returned home from the Louis Lane party. Woolwine also

---

[3] Young was initially a codefendant in the case. Prior to trial, Young agreed to plead guilty to voluntary manslaughter with a knife allegation, with a stipulated seven-year sentence.

[4] Police eventually recovered the knife from the pond. At trial, Nicholas testified that the knife that police recovered from the pond appeared to be the knife that he had allowed Turk to borrow on the night of the killing.

testified that Young had previously brandished a knife during an incident at a grocery store. Patricia Boice, Turk's mother, testified regarding a separate incident in which Young brandished a knife. Judy Viskoe, a friend of Turk's, and a former friend of Young's, testified that Young had told her that he could not recall whether he had stabbed Howell on the night of the Louis Lane party, because Young had blacked out. Stephanie Matthews testified that in January 2006, she had a conversation with Young during which Young demonstrated how one could stab someone in the stomach in a manner so as to seriously injure the person. Turk did not testify.

During closing argument, defense counsel maintained that Turk had not stabbed anyone. Defense counsel argued that Young and other witnesses had testified falsely, and suggested that some or all of these individuals were responsible for the killing. Defense counsel also stated that Turk was "puking drunk" after the Louis Lane party.

## III.

## DISCUSSION

A. *The trial court did not err in failing to instruct the jury sua sponte regarding involuntary manslaughter stemming from voluntary intoxication*

Turk claims that the trial court erred in failing to instruct the jury sua sponte that "when a defendant, as a result of voluntary intoxication, kills another human being without premeditation and deliberation and/or without intent to kill (i.e. without express malice), the resultant crime is involuntary manslaughter." We conclude that the trial court properly did not provide the jury with this instruction because it is an incorrect statement of California law.

1. *Standard of review*

We apply a de novo standard of review to the question whether the trial court should have given an instruction on the lesser included offense of involuntary manslaughter. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584 [36 Cal.Rptr.3d 340, 123 P.3d 614].)

### 2. Factual and procedural background

#### a. Evidence of Turk's intoxication near the time of the killing[5]

Maria Ortega, who attended the Louis Lane party and saw Turk there, agreed with defense counsel that she had told a police officer that Turk seemed "a little drunk" at the party. Alan Salinas testified that at the Louis Lane party, he overheard Turk say to someone while on a cell phone, "Paul Howell is here and I am drunk." Salinas also testified that at some later point during the party, he observed Turk "grab[] a few beers" from outside the house, return to the kitchen, and provoke the fight with Howell that resulted in Howell's death.

Young described Turk's demeanor as the two got into Chris's truck to leave the party after the fight as follows: "He was kind of pale. He was real drunk, and kind of still amped up because we were fighting." Young also described Turk's level of intoxication after Chris took Turk and Young to Turk's house: "[Turk] was pretty drunk. He was pretty hammered. Right when we got home, he started turning pale and he was stumbling everywhere and puked in the toilet and stuff." Young also admitted that during the investigation into the killing, he had told investigators that Turk was too drunk to dispose of the clothes Turk had been wearing during the fight with Howell.

Woolwine testified that when Turk returned home from the party, he appeared drunk, "was stumbling into walls," and "went into the bathroom to throw up."

Tricia Boice, Turk's other sister, testified that when she attempted to wake Turk on the morning following the killing, he "reeked of alcohol."

#### b. The trial court's jury instructions

The trial court instructed the jury regarding murder pursuant to a modified version of CALCRIM No. 520. The court instructed the jury in relevant part:

"The defendant is charged with murder. . . .

"To prove that the defendant is guilty of this crime, the People must prove two things:

---

[5] In considering whether the trial court had a sua sponte duty to instruct the jury on the lesser included offense of involuntary manslaughter, we construe the evidence of Turk's intoxication, as cited in his brief, in the light most favorable to Turk. (See *People v. Stewart* (2000) 77 Cal.App.4th 785, 795–796 [91 Cal.Rptr.2d 888] (*Stewart*).)

"Number one, the defendant committed an act that caused the death of another person; and, number two, when the defendant acted, he had a state of mind called 'malice aforethought.'

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.

"The defendant acted with express malice if he unlawfully intended to kill. The defendant acted with implied malice if he, number one, intentionally committed an act; number two, the natural consequences of the act were dangerous to human life; number three, at the time he acted he knew his act was dangerous to human life; and, number four, he deliberately acted with conscious disregard for life."

The trial court instructed the jury regarding voluntary intoxication pursuant to a modified version of CALCRIM No. 625 as follows:

"You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation.

"A person is voluntarily intoxicated if he becomes intoxicated by willingly using an intoxicating drug, drink, or other substance, knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. You may not consider evidence of voluntary intoxication for any other purpose."

The trial court instructed the jury regarding involuntary manslaughter pursuant to a modified version of CALCRIM No. 580 in relevant part as follows:

"When a person commits an unlawful killing but does not intend to kill and does not act with conscious disregard for human life, then the crime is involuntary manslaughter.

"The difference between other homicide offenses and involuntary manslaughter depends on whether the person was aware of the risk to life that his or her actions created and consciously disregarded that risk.

"An unlawful killing caused by a willful act done with full knowledge and awareness that the person is endangering the life of another, and done in conscious disregard of that risk, is voluntary manslaughter or murder.

"An unlawful killing resulting from a willful act committed without intent to kill and without conscious disregard of the risk to human life is involuntary manslaughter.

"The defendant committed involuntary manslaughter if, number one, the defendant committed a crime that posed a high risk of death or great bodily injury because of the way in which it was committed; and, number two, the defendant's acts unlawfully caused the death of another person. [¶] . . . [¶]

"In order to prove murder or voluntary manslaughter, the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill or with conscious disregard for human life.

"If the People have not met either of those burdens, you must find the defendant not guilty of murder and not guilty of voluntary manslaughter."

### 3. *Governing law*

#### a. *Relevant statutory law*

Section 187 provides in relevant part, "(a) Murder is the unlawful killing of a human being . . . with malice aforethought." Section 188 defines malice as follows:

"Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

"When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought. Neither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice."

Section 22 governs the admissibility of evidence of the voluntary intoxication of the defendant in a criminal case:

"(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not

limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.

"(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.

"(c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance."

     b.  *Relevant case law*

          (i)  *General principles of law regarding jury instructions on involuntary manslaughter as a lesser included offense of murder*

A trial court must instruct the jury sua sponte on involuntary manslaughter as a lesser included offense of murder where, "there is substantial evidence that the defendant committed the lesser included offense, which, if accepted by the trier of fact, would exculpate the defendant from guilt of the greater offense." (*People v. Cook* (2006) 39 Cal.4th 566, 596 [47 Cal.Rptr.3d 22, 139 P.3d 492] (*Cook*).) " 'If the evidence presents a material issue of whether a killing was committed without malice, and if there is substantial evidence the defendant committed involuntary manslaughter, failing to instruct on involuntary manslaughter would violate the defendant's constitutional right to have the jury determine every material issue.' " (*People v. Abilez* (2007) 41 Cal.4th 472, 515 [61 Cal.Rptr.3d 526, 161 P.3d 58] (*Abilez*).)

          (ii)  *The duty to instruct on involuntary manslaughter as a lesser included offense of murder based on unconsciousness stemming from voluntary intoxication*

A trial court must instruct the jury "sua sponte on involuntary manslaughter based on unconsciousness" whenever "there is evidence deserving of consideration[6] that the defendant was unconscious due to voluntary intoxication." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 418 [64 Cal.Rptr.3d 721, 165 P.3d 512] (*Halvorsen*); see also *Abilez, supra,* 41 Cal.4th

---

   [6] In *People v. Breverman* (1998) 19 Cal.4th 142, 175, fn. 22 [77 Cal.Rptr.2d 870, 960 P.2d 1094], the court indicated that this standard is equivalent to the substantial evidence standard for instructing on lesser included offenses generally.

at p. 515; *People v. Ochoa* (1998) 19 Cal.4th 353 [79 Cal.Rptr.2d 408, 966 P.2d 442] (*Ochoa*); CALCRIM No. 626.)

■ In *Ochoa, supra,* 19 Cal.4th at pages 423–424, the court outlined the law regarding involuntary manslaughter based upon unconsciousness induced by voluntary intoxication: "When a person renders himself or herself unconscious through voluntary intoxication and kills in that state, the killing is attributed to his or her negligence in self-intoxicating to that point, and is treated as involuntary manslaughter. 'Unconsciousness is ordinarily a complete defense to a charge of criminal homicide. [Citation.] If the state of unconsciousness results from intoxication voluntarily induced, however, it is not a complete defense. [Citation.] . . . [I]f the intoxication is voluntarily induced, it can never excuse homicide. [Citation.] Thus, the requisite element of criminal negligence is deemed to exist irrespective of unconsciousness, and a defendant stands guilty of involuntary manslaughter if he voluntarily procured his own intoxication.' [Citation.] Unconsciousness for this purpose need not mean that the actor lies still and unresponsive: section 26 describes as '[in]capable of committing crimes . . . [¶] . . . [¶] . . . [p]ersons who *committed the act* . . . without being conscious thereof.' . . . Thus unconsciousness ' "can exist . . . where the subject physically acts in fact but is not, at the time, conscious of acting." ' [Citations.]"

The *Ochoa* court applied this law in concluding that there was insufficient evidence of unconsciousness in that case to warrant an instruction on involuntary manslaughter as a lesser included offense of murder. The *Ochoa* court reasoned that the defendant's actions, including telling the victim to be quiet, displaying a knife, and taking the victim to a secluded location, demonstrated, "a methodical, calculated approach to the crimes." (*Ochoa, supra,* 19 Cal.4th at p. 424.) The *Ochoa* court further concluded that the defendant's statement "that he did not know what was going through his mind," did not necessitate an involuntary manslaughter instruction and could be understood to mean only that "intoxication clouded his judgment and caused him to make foolish choices . . . ." (*Ibid.*)

In *Halvorsen, supra,* 42 Cal.4th 379, the court concluded that expert testimony that the defendant's blood-alcohol content might have approached .20 at the time of the shootings, and that the defendant "habitually drank to excess with resultant memory losses," did not constitute substantial evidence warranting an involuntary manslaughter instruction premised on unconsciousness. (*Id.* at pp. 418–419.)

The *Abilez* court similarly rejected a defendant's claim that an involuntary manslaughter instruction was required based on evidence of the defendant's intoxication at the time of the killing. The *Abilez* court reasoned: "The

evidence here shows defendant had consumed some unknown amount of alcohol, but there was no evidence he was so intoxicated that he could be considered unconscious. He went to the victim's home, spoke to his brother Chachi, killed Loza, and then ransacked her and Carlon's bedrooms, loading Loza's car with stolen items before driving away. Later, he tried to sell the stolen goods to Leonard Mercado. Nothing in these facts even hints that defendant was so grossly intoxicated as to have been considered unconscious." (*Abilez, supra,* 41 Cal.4th at p. 516.)

> (iii) *Case law regarding the duty to instruct on involuntary manslaughter as a lesser included offense of murder, based on voluntary intoxication short of unconsciousness*

In claiming that the trial court erred in failing to instruct the jury on involuntary manslaughter, Turk relies primarily on *People v. Ray* (1975) 14 Cal.3d 20 [120 Cal.Rptr. 377, 533 P.2d 1017] (*Ray*) abrogated on another ground by *People v. Lasko* (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666], in which the Supreme Court held that "an instruction on involuntary manslaughter is required if there is evidence that the accused is unable to entertain an intent to kill even though he has not lapsed into unconsciousness." (*Ray, supra,* 14 Cal.3d at pp. 28–29.) The *Ray* court noted that where there is evidence of a defendant's unconsciousness premised on voluntary intoxication, "such evidence requires an instruction on involuntary manslaughter." (*Id.* at p. 30.) However, the *Ray* court further explained that evidence of unconsciousness is not *required* for such an instruction. (*Ibid.* ["But if an accused is unable to harbor malice and an intent to kill because of voluntary intoxication which does not render him unconscious he cannot be guilty of an unlawful homicide greater than involuntary manslaughter and the jury must be so instructed."].)

The *Ray* court's holding was premised on then existing law regarding malice aforethought and the doctrine of diminished capacity. The *Ray* court summarized that law as follows: "The unlawful killing of a human being with malice aforethought is murder. [Citation.] If because of diminished capacity the perpetrator is unable to entertain malice but nevertheless is found to be able to form the intent to kill the crime is voluntary manslaughter. If because of his diminished capacity he additionally did not intend to kill, his crime, if any, is involuntary manslaughter. [Citation.]" (*Ray, supra,* 14 Cal.3d at p. 28.)

In *People v. Saille* (1991) 54 Cal.3d 1103 [2 Cal.Rptr.2d 364, 820 P.2d 588] (*Saille*), the California Supreme Court considered the effect on the crime of voluntary manslaughter of legislation that abolished the doctrine of diminished capacity, including an amendment to the definition of malice in

section 188.[7] The *Saille* court concluded that the law no longer "permits a reduction of what would otherwise be murder to nonstatutory voluntary manslaughter due to voluntary intoxication . . . ." (*Saille, supra,* 54 Cal.3d at p. 1107.) The *Saille* court reasoned in part: "In amending section 188 in 1981, the Legislature equated express malice with an intent unlawfully to kill. Since two distinct concepts no longer exist, there has been some narrowing of the mental element included in the statutory definition of express malice. A defendant, however, is still free to show that because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill (i.e., did not have malice aforethought). [Citation.] In a murder case, if this evidence is believed, the only supportable verdict would be involuntary manslaughter or an acquittal. If such a showing gives rise to a reasonable doubt, the killing (assuming there is no implied malice) can be no greater than involuntary manslaughter. [Citation.]" (*Id.* at pp. 1116–1117.)

In *People v. Webber* (1991) 228 Cal.App.3d 1146, 1162 [279 Cal.Rptr. 437] (*Webber*), the court applied *Ray* and concluded that, notwithstanding the abolition of the diminished capacity doctrine in 1981, the trial court had erred in failing to instruct the jury regarding involuntary manslaughter premised on voluntary intoxication sufficient to negate malice and the intent to kill. The *Webber* court reasoned:

"Although diminished capacity is no longer a complete defense, pursuant to section 22, subdivision (b), rebuttal evidence must still be considered by the trier of fact in determining whether a defendant actually formed malice or the intent to kill. [Citation.] '[W]hether the defendant had or did not have the required mental states shall be decided by the trier of fact.' [Citation.]

"Accordingly, *Ray* is still good law in its holding that where there is substantial evidence that a defendant was unable to entertain, i.e., did not actually form, an intent to kill, the court has a sua sponte duty to instruct on involuntary manslaughter." (*Webber, supra,* 228 Cal.App.3d at p. 1162.)

(iv) *The 1995 amendment to section 22, subdivision (b)*

In *People v. Whitfield* (1994) 7 Cal.4th 437, 451 [27 Cal.Rptr.2d 858, 868 P.2d 272], superseded by statute as stated in *People v. Reyes* (1997) 52 Cal.App.4th 975 [61 Cal.Rptr.2d 39] (*Reyes*), the Supreme Court held that evidence of voluntary intoxication is admissible to negate implied as well as express malice. In 1995, among other changes to section 22, the Legislature inserted the word "express" before the word "malice" in subdivision (b) of

---

[7] The 1981 amendment (Stats. 1981, ch. 404, § 6, p. 1593) added the second paragraph in section 188. (See pt. III.A.3.a., *ante.*)

the statute. (Stats. 1995, ch. 793, § 1, p. 6149.) The legislative history of the amendment unequivocally indicates that the Legislature intended to legislatively supersede *Whitfield*, and make voluntary intoxication inadmissible to negate implied malice in cases in which a defendant is charged with murder: "Under existing law, as held by the California Supreme Court in *People v. Whitfield*, [*supra*,] 7 Cal.4th 437, the phrase 'when a specific intent crime is charged' includes murder even where the prosecution relies on a theory of implied malice. [¶] This bill would provide, instead, that evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (Legis. Counsel's Dig., Sen. Bill No. 121 (1995–1996 Reg. Sess.) 5 Stats. 1995, Summary Dig., p. 334.)

In *People v. Timms* (2007) 151 Cal.App.4th 1292, 1298 [60 Cal.Rptr.3d 677], the court held that, pursuant to the 1995 amendment to section 22, subdivision (b), evidence of a defendant's voluntary intoxication is no longer admissible to negate *implied* malice. (See also *People v. Martin* (2000) 78 Cal.App.4th 1107, 1114–1115 [93 Cal.Rptr.2d 433]; *Reyes, supra,* 52 Cal.App.4th at p. 984, fn. 6 [both stating that due to 1995 amendment to section 22, voluntary intoxication is no longer admissible to negate implied malice].)[8]

      (v)   *The duty to instruct on involuntary manslaughter as a lesser included offense of murder stemming from voluntary intoxication not resulting in unconsciousness, under current law*

We are aware of no case, and Turk cites none, in which a court has directly addressed whether *Ray* and *Webber* remain good law in the wake of the 1995 amendment to section 22, subdivision (b) making evidence of voluntary intoxication inadmissible to negate implied malice.

The Supreme Court has suggested the potential relevance of the 1995 amendment to this issue, in two cases. In *People v. Hughes* (2002) 27 Cal.4th 287 [116 Cal.Rptr.2d 401, 39 P.3d 432] (*Hughes*), the defendant claimed that the trial court erred in failing to instruct the jury that "voluntary intoxication falling short of unconsciousness also could negate intent to kill and/or malice aforethought . . . ." (*Id.* at p. 345.) The *Hughes* court concluded that the invited error doctrine barred the defendant's claim, and thus did not have to decide whether the instruction "correctly describe[d] the law, in light of the

---

[8] Turk concedes in his reply brief that "intoxication cannot negate implied malice."

subsequent 1995 amendment to section 22, subdivision (b) . . . ." (*Id.* at p. 345, fn. 10.) In *People v. Boyer* (2006) 38 Cal.4th 412, 469, fn. 40 [42 Cal.Rptr.3d 677, 133 P.3d 581] (*Boyer*), the court stated in dicta that, in light of the 1995 amendment to section 22, subdivision (b), it "now appears that defendant's voluntary intoxication, even to the point of actual unconsciousness, would not prevent his conviction of second degree murder on an implied malice theory . . . ."

In considering whether the trial court had a duty to instruct on involuntary manslaughter stemming from voluntary intoxication, in *Halvorsen, supra,* 42 Cal.4th at page 418, *Abilez, supra,* 41 Cal.4th at page 515, and *Ochoa, supra,* 19 Cal.4th at page 353, the Supreme Court considered whether the record contained evidence sufficient to support a finding of unconsciousness, without discussing *Ray*'s holding that an instruction on involuntary manslaughter may be required even if the defendant has not lapsed into unconsciousness.

Lacking definitive guidance from the Supreme Court on this issue, we consider the effect of the 1995 amendment to section 22, subdivision (b) on the holdings in *Ray* and *Webber*. Prior to 1981, voluntary intoxication could negate malice, both express and implied, and/or intent to kill. (*Ray, supra,* 14 Cal.3d at p. 30.) Therefore, voluntary intoxication, even short of unconsciousness, could result in either voluntary manslaughter, where the defendant's intoxication negated malice, or involuntary manslaughter, where the defendant's intoxication negated both malice and intent to kill. (*Ibid.*) After the 1981 abolition of the diminished capacity doctrine, voluntary intoxication could no longer reduce a killing from murder to voluntary manslaughter. (*Saille, supra,* 54 Cal.3d at pp. 1116–1117.) However, prior to the 1995 amendment to section 22, subdivision (b), voluntary intoxication could still negate malice, both express and implied, and could also negate intent to kill. (*Webber, supra,* 228 Cal.App.3d at p. 1162.) Thus, prior to 1995, voluntary intoxication, short of unconsciousness, could still result in a conviction for involuntary manslaughter. (*Ibid.*)

■ It is no longer proper to instruct a jury, as Turk suggests, that "when a defendant, as a result of voluntary intoxication, kills another human being without premeditation and deliberation and/or without intent to kill (i.e. without express malice), the resultant crime is involuntary manslaughter." This instruction is incorrect because a defendant who unlawfully kills without express malice due to voluntary intoxication can still act with implied malice, which voluntary intoxication cannot negate, in the wake of the 1995 amendment to section 22, subdivision (b).[9] To the extent that a defendant who is

---

[9] At another point in his brief, Turk appears to acknowledge that this instruction would not be a correct statement of law in cases in which the jury could find that the defendant acted with implied malice. He notes, "[W]hen the evidence shows a defendant, because of his

voluntarily intoxicated unlawfully kills with implied malice, the defendant would be guilty of second degree murder.

In reaching this conclusion we acknowledge that in *People v. Rogers* (2006) 39 Cal.4th 826, 884 [48 Cal.Rptr.3d 1, 141 P.3d 135] (*Rogers*), the Supreme Court cited *Ray* and *Webber* with apparent approval in considering a similar issue. The *Rogers* court stated: "Defendant asserts the trial court erred in failing to instruct on its own motion on the lesser included offense of involuntary manslaughter in relation to count one, the Clark count. Involuntary manslaughter is 'the unlawful killing of a human being without malice aforethought and without an intent to kill.' [Citation.] A verdict of involuntary manslaughter is warranted where the defendant demonstrates 'that because of his mental illness . . . he did not *in fact* form the intent unlawfully to kill (i.e., did not have malice aforethought).' (*People v. Saille, supra*, 54 Cal.3d at p. 1117 [2 Cal.Rptr.2d 364, 820 P.2d 588].) An instruction on involuntary manslaughter is required whenever there is substantial evidence indicating the defendant did not actually form the intent to kill. ([*Webber, supra*,] 228 Cal.App.3d 1146, 1162 [279 Cal.Rptr. 437]; see [*Ray, supra*,] 14 Cal.3d 20, 28–29 [120 Cal.Rptr. 377].)" (*Rogers, supra*, 39 Cal.4th at p. 884.)

However, *Rogers* is not authority for the proposition that the holdings in *Ray* and *Webber* necessitate giving an involuntary manslaughter instruction in a case that involves voluntary intoxication, because *Rogers* did not involve voluntary intoxication.[10] Thus, the *Rogers* court did not consider the potential effect of the 1995 amendment to section 22, subdivision (b) on the holdings in *Ray* and *Webber*.

4. *The trial court did not err in failing to instruct the jury sua sponte regarding involuntary manslaughter premised on voluntary intoxication*

a. *The trial court properly refused to instruct the jury that a killing is involuntary manslaughter when committed by a defendant who is voluntarily intoxicated to the degree that intent to kill is negated*

We assume for purposes of this decision that the record contains sufficient evidence from which the jury could have found that, due to voluntary

---

intoxicated state, may not have had the requisite malice (intent to unlawfully kill), the requisite premeditation, or the requisite deliberation to be a first degree murder, he or she must be found (shy of an all-out acquittal) guilty of involuntary manslaughter—*unless implied malice is found.*" (Italics added.)

[10] In *Rogers*, the defendant claimed that an involuntary manslaughter instruction was required because due to a "mental illness resulting from extensive physical and sexual abuse as a child . . . [he] did not form the mental state or states required for the charged crimes." (*Rogers, supra*, 39 Cal.4th at p. 835; see *id.* at p. 884.)

intoxication, Turk did not harbor express malice. The trial court thus properly instructed the jury pursuant to CALCRIM No. 625 that it could consider Turk's voluntary intoxication in determining whether he acted with premeditation or with the intent to kill.[11] (See pt. III.B., *post.*)

However, the People also presented evidence from which the jury could have found that Turk acted with implied malice in committing the killing. The trial court instructed the jury on this theory of murder. In his brief, Turk fails to identify any evidence, apart from voluntary intoxication, from which the jury could have concluded that he was entitled to an involuntary manslaughter instruction on the ground that he committed the killing, but that he did not act with implied malice.[12] For the reasons stated above, a defendant who kills without express malice due to voluntary intoxication can still act with implied malice. Turk has thus identified no evidence from which the jury could have found that he committed the lesser offense of involuntary manslaughter, but not the greater offense of murder. Therefore, the court was not required to give a lesser included offense instruction premised on this theory of involuntary manslaughter. (See *Cook, supra,* 39 Cal.4th at p. 596.)

>   b.   *There was insufficient evidence of Turk's unconsciousness to warrant an involuntary manslaughter instruction premised on voluntary intoxication*

Turk's opening brief is ambiguous as to whether he is claiming that the trial court erred in failing to instruct on involuntary manslaughter on the ground that there was substantial evidence that he was unconscious due to

---

[11] While a trial court has a sua sponte duty to instruct on involuntary manslaughter as a lesser included offense of murder where there is sufficient evidence that the defendant committed the killing in a state of unconsciousness induced by voluntary intoxication (*Halvorsen, supra,* 42 Cal.4th at p. 418), the trial court does not have a sua sponte duty to instruct the jury regarding the manner in which voluntary intoxication may be relevant to an element of a crime. (*Saille, supra,* 54 Cal.3d at p. 1120.)

[12] Turk does claim that voluntary intoxication, to the point of unconsciousness, could render a person unable to act with conscious disregard for human life, and therefore, unable to act with implied malice. Turk argues, "Making the question even more complex yet is that even though intoxication cannot negate implied malice, nothing precludes the jury from considering whether an intoxicated state renders an accused unconscious to the degree he was not fully aware of the nature of his acts and thus did not act in conscious disregard for human life." We consider whether there was sufficient evidence of unconsciousness to warrant an instruction on this theory of involuntary manslaughter in part III.A.4.b., *post.*

voluntary intoxication.[13] To the extent that Turk intends to raise this claim, we reject it because the record does not contain sufficient evidence to warrant this instruction.[14]

Even viewed in the light most favorable to Turk (*Stewart, supra,* 77 Cal.App.4th at pp. 795–796), the evidence he cites in his brief regarding his level of intoxication near the time of the killing is insufficient to support a finding that he was unconscious at the time of the killing. Ortega's testimony that Turk was a "little drunk" at the party clearly does not support a finding that Turk was so "grossly intoxicated" so as to be unconscious at the time he stabbed Howell. (*Abilez, supra,* 41 Cal.4th at p. 516.) Salinas's testimony that he overheard Turk tell someone, "I am drunk," is actually evidence that Turk "did *not* lack awareness of his actions." (*Halvorsen, supra,* 42 Cal.4th at p. 418, italics added.) Salinas's testimony regarding Turk's provoking the fight with Howell also suggests that Turk was conscious at the time of the killing. (See *ibid.* ["purposive nature of [defendant's] conduct" prior to killings suggested that defendant was conscious].) Further, Tricia Boice's testimony that on the day *after* the killing, Turk "reeked of alcohol," has little or no evidentiary value in determining Turk's level of intoxication at the time of the killing.

Young's and Woolwine's testimony indicating that Turk appeared highly intoxicated shortly after the killing and that Turk's intoxication resulted in a loss of coordination and nausea suggests that Turk was significantly intoxicated at the time of the killing. However, this testimony does not support the inference that Turk was so intoxicated as to be unconscious at the time of the killing.

Neither Young, Woolwine nor any other eyewitness testified that, prior to the killing, Turk appeared to "lack awareness of his actions" as a result of intoxication. (*Halvorsen, supra,* 42 Cal.4th at p. 418.) Turk did not testify at trial and there is no statement from him therefore that he lacked a recollection of the events preceding the killing. (*Ibid.* [stating that evidence that defendant did not "accurately recall certain details of the shootings does not support an inference he was unconscious when he committed them" and distinguishing cases in which "the defendants testified to a mental state consistent with unconsciousness and with prior statements to police"].)

---

[13] In his reply brief, Turk claims that the trial court should have instructed the jury regarding involuntary manslaughter pursuant to CALCRIM No. 626, which pertains to a killing committed by a defendant while unconscious due to voluntary intoxication.

[14] We assume for purposes of this decision that a trial court should provide this instruction in cases in which one could conclude that voluntary intoxication led to unconsciousness. (But see *Boyer, supra,* 38 Cal.4th at p. 469, fn. 40.)

Further, there was no expert testimony presented suggesting that the symptoms of intoxication that Turk exhibited, as described by Young and Woolwine, indicated unconsciousness stemming from intoxication. (Compare with *Hughes, supra,* 27 Cal.4th at p. 322 [noting existence of expert testimony "explain[ing] that most persons whose blood-alcohol level is between .25 and .35 percent would be 'stuporous'—that is, the person would have great difficulty getting up and moving about, and be very unsteady, incoherent, and disoriented—and that most persons with a blood-alcohol level above .35 percent would be 'unconscious,' that is, unable to stand erect or move without support, and would be unaware of their surroundings"].)

Further, Young and Woolwine's testimony that Turk appeared intoxicated does not, by itself, constitute evidence of unconsciousness. In *Ray,* the defendant presented expert testimony that the level of secobarbital in his bloodstream on the day of the killing would have produced an effect equivalent to a blood-alcohol level of .20 to .25 percent. (*Ray, supra,* 14 Cal.3d at p. 25, fn. 3.) Further, several witnesses testified that the defendant appeared "dazed" during two fights that ultimately culminated in the victim's death. (*Ibid.*) The *Ray* court nevertheless emphatically concluded that, "Defendant's contention that the court was required to instruct *sua sponte* on the defense of unconsciousness fails because of a complete absence of factual support in the record." (*Id.* at p. 25.) The *Ray* court reasoned: "Testimony that he appeared dazed at times is entirely consistent with expert opinion that drugs ingested by defendant produced an intoxication which, together with the blows to his head, could have caused defendant to be 'quite confused in a mental sense.' No expert, however, testified that following the first altercation defendant thereafter continued to function in an unconscious state as a result of his experiences." (*Ray, supra,* 14 Cal.3d at p. 26.) Similarly, in this case, Turk identifies no expert or eyewitness testimony that suggests that he was unconscious at the time of the killing.

Further, Turk does not suggest that there was any evidence of the amount of alcohol he ingested prior to the killing, or of his blood-alcohol level at the time of the killing. (Compare with *People v. Graham* (1969) 71 Cal.2d 303, 311 [78 Cal.Rptr. 217, 455 P.2d 153], disapproved on another ground by *Ray, supra,* 14 Cal.3d at p. 32 [concluding trial court erred in failing to instruct the jury regarding unconsciousness stemming from voluntary intoxication in case in which record contained evidence that on afternoon and evening of killing, defendant drank "a fifth of wine," two-thirds of "a pint of scotch," shared another fifth of wine with a second person and consumed a cube of sugar containing LSD].)

■ In sum, the evidence, when viewed in the light most favorable to Turk, indicates that prior to the killing, he had "consumed some unknown amount of alcohol" resulting in a level of intoxication short of the "grossly intoxicated" state of unconsciousness. (*Abilez, supra,* 41 Cal.4th at p. 516.) Accordingly, we conclude that the trial court did not err in failing to instruct the jury sua sponte regarding involuntary manslaughter stemming from voluntary intoxication.[15]

### B. *CALCRIM No. 625 correctly states the law regarding voluntary intoxication*

Turk claims that the trial court erred in instructing the jury pursuant to CALCRIM No. 625 because the instruction erroneously informed the jury that it could not consider Turk's voluntary intoxication in determining whether he harbored malice aforethought. Turk's primary contention is that while CALCRIM No. 625 informed the jury that it could consider his voluntary intoxication in determining whether he acted with the intent to kill, the instruction implied that the jury could not consider his voluntary intoxication in determining whether he acted with malice aforethought.

"The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law . . . ." (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].)

#### 1. *Factual and procedural background*

In instructing the jury regarding the offense of murder, the trial court gave instructions regarding the concepts of express and implied malice, pursuant to a modified version of CALCRIM No. 520. (See pt. III.A.2.b., *ante.*) The trial court instructed the jury regarding voluntary intoxication pursuant to a modified version of CALCRIM No. 625. (See pt. III.A.2.b., *ante.*)

---

[15] In light of our conclusion that the trial court did not have a sua sponte duty to instruct on involuntary manslaughter premised on voluntary intoxication, we need not consider the People's argument that the trial court adequately instructed the jury regarding this theory of involuntary manslaughter by instructing the jury on involuntary manslaughter pursuant to CALCRIM No. 580 and voluntary intoxication pursuant to CALCRIM No. 625. However, we note that the modified version of CALCRIM No. 580 that the court gave in this case did not refer to voluntary intoxication. (Compare with CALCRIM No. 626 [involuntary manslaughter premised on unconsciousness stemming from voluntary intoxication].) The trial court's involuntary manslaughter instruction was premised on a distinct theory of involuntary manslaughter. The instruction informed the jury that in order to find Turk guilty of involuntary manslaughter, it had to find, inter alia, that he "committed a crime that posed a high risk of death or great bodily injury because of the way in which it was committed."

### 2. Governing law

#### a. Relevant statutory law

■ Sections 187 and 188 define murder and malice aforethought, respectively. (See pt. III.A.3.a., *ante.*) Section 22, subdivision (b) limits the admissibility of evidence of a defendant's voluntary intoxication in a case in which the defendant is charged with murder to "whether the defendant premeditated, deliberated, or harbored express malice aforethought." (See pt. III.A.3.a., *ante.*)

#### b. Voluntary intoxication and its relation to express and implied malice

In the wake of *Saille, supra,* 54 Cal.3d 1103, the California Supreme Court has repeatedly stated that intent to kill and express malice are "in essence" the same concept. (*People v. Smith* (2005) 37 Cal.4th 733, 739 [37 Cal.Rptr.3d 163, 124 P.3d 730] ["Intent to unlawfully kill and express malice are, in essence, 'one and the same' " (quoting *Saille, supra,* 54 Cal.3d at p. 1114)]; *People v. Moon* (2005) 37 Cal.4th 1, 29 [32 Cal.Rptr.3d 894, 117 P.3d 591] ["An intent to kill is the ' "functional equivalent" ' of *express* malice."].) Any distinction between the two concepts comes from the fact that "unreasonable self-defense or a heat of passion defense can further reduce an intentional killing to voluntary manslaughter." (*People v. Swain* (1996) 12 Cal.4th 593, 601, fn. 2 [49 Cal.Rptr.2d 390, 909 P.2d 994].)

### 3. The trial court's instructions properly informed the jury that it could consider evidence of voluntary intoxication on the issue of express malice

Turk argues, "[T]he jury would not have known it could consider the impact of intoxication upon malice aforethought—not unless the jury somehow knew that malice aforethought (express malice, that is) and specific intent were one and the same."[16] However, consistent with section 188 and *Saille,* the trial court specifically instructed the jury that, "The defendant acted with express malice if he unlawfully intended to kill." The court further

---

[16] In his argument regarding the failure of the trial court to instruct sua sponte regarding involuntary manslaughter, Turk contends that CALCRIM No. 625 is an incorrect statement of law because it precludes a jury from considering whether voluntary intoxication caused a defendant to become unconscious.

Where a trial court instructs a jury regarding voluntary intoxication resulting in unconsciousness, the Bench Notes to CALCRIM No. 625 provide that the court should include in the instruction the words "or the defendant was unconscious when he/she acted." In this case, the trial court properly did not include this language because the trial court did not instruct on voluntary intoxication resulting in unconsciousness.

instructed the jury that it could consider evidence of Turk's voluntary intoxication in deciding whether he had acted "with an intent to kill." Thus, considering the instructions as a whole, as we must (e.g., *People v. Campos* (2007) 156 Cal.App.4th 1228, 1237 [67 Cal.Rptr.3d 904]), the trial court adequately informed the jury that it could consider evidence of Turk's voluntary intoxication on the issue of express malice.

We reject Turk's argument that Justice Brown's concurring opinion in *People v. Wright* (2005) 35 Cal.4th 964, 977 [28 Cal.Rptr.3d 708, 111 P.3d 973] (*Wright*) supports his claim. In her concurring opinion in *Wright*, Justice Brown discussed the history of the California Supreme Court's efforts to define malice aforethought. (*Id.* at p. 979 (conc. opn. of Brown, J.).) In describing that history, Justice Brown noted that, pursuant to *People v. Conley* (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911], disapproved on another ground in *Ray, supra,* 14 Cal.3d at page 32, and superseded by statute as stated in *Saille, supra,* 54 Cal.3d at page 1114, California law regarding malice aforethought had previously provided that, " '[a]n awareness of the obligation to act within the general body of laws regulating society . . . is included in the statutory definition of . . . malice . . . .' " (*Wright, supra,* 35 Cal.4th at p. 977 (conc. opn. of Brown, J.), quoting *Conley, supra,* 64 Cal.2d at p. 322.) Justice Brown explained that decisions such as *Conley,* in which the Supreme Court interpreted malice as including a component of an awareness of civic duty, reflected an effort to distinguish malice from intent to kill: "If malice aforethought were closely tied to intent, then any factual defense that might disprove malice would also tend to disprove intent, making a voluntary manslaughter conviction inappropriate and voluntary manslaughter instructions unnecessary. But, by defining malice in a way that sharply distinguished it from intent, we created the possibility that the evidence might disprove malice but nevertheless establish an intentional unlawful killing, making a voluntary manslaughter conviction appropriate. In short, by an accretion upon the statutory definition of malice, we were able to create an element of murder that could be disproved by diminished capacity evidence without simultaneously disproving intent to kill. This accretion, therefore, provided the logical basis by which diminished capacity might reduce murder to voluntary manslaughter." (*Wright, supra,* 35 Cal.4th at pp. 977–978 (conc. opn. of Brown, J.).)

Turk claims that this quotation represents Justice Brown's "understanding of the law," and goes on to argue that a properly instructed jury could have determined that his intoxication prevented him from acting with malice, which he defines as acting without "an awareness of his duty to act in a lawful manner." We disagree.

First, and most fundamentally, the quotation in question did not represent Justice Brown's understanding of the law applicable at the time *Wright* was decided, nor does it represent current law. As Justice Brown herself made clear, in abolishing the diminished capacity doctrine in 1981, the Legislature "rejected the awareness-of-civic-duty gloss we had put on the definition of malice aforethought." (*Wright, supra,* 35 Cal.4th at p. 978 (conc. opn. of Brown, J.).) Referring to the same amendment of section 188 that was at issue in *Saille,* Justice Brown explained, "As amended, section 188 now provides: 'Neither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice.' " (*Wright, supra,* 35 Cal.4th at p. 978 (conc. opn. of Brown, J.); accord, *Saille, supra,* 54 Cal.3d at p. 1114 [stating that amendment to section 188 "directly repudiates the expanded definition of malice aforethought in *People v. Conley, supra,* 64 Cal.2d 310"].) Thus, Justice Brown merely noted in her concurring opinion in *Wright* that California law pertaining to malice aforethought had *previously* contained an "awareness-of-civic-duty" component. Turk obviously was not entitled to have the jury instructed on the state of the law as it existed prior to 1981.

In any event, even assuming that Justice Brown intended to express the view that express malice remained distinct from an intent to kill, notwithstanding the 1981 amendment to section 188, the Supreme Court has repeatedly stated, both before and after Justice Brown wrote her concurring opinion, that express malice and intent to kill are, in essence, one and the same. (E.g., *People v. Smith, supra,* 37 Cal.4th at p. 739; *Saille, supra,* 54 Cal.3d at p. 1114.) We are bound by those opinions (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), not by Justice Brown's concurring opinion. (See, e.g., *People v. Franz* (2001) 88 Cal.App.4th 1426, 1442 [106 Cal.Rptr.2d 773] ["a concurring opinion is not precedential authority"].)

Accordingly, we conclude that the trial court properly instructed the jury pursuant to CALCRIM No. 625.[17]

C.–E.[*]

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[17] In view of our conclusion that the trial court did not err in instructing the jury pursuant to CALCRIM No. 625, we need not consider whether any instructional error would have been harmless, since Turk was convicted of second degree murder, and the jury was instructed on implied malice, for which evidence of Turk's voluntary intoxication was inadmissible.

[*]See footnote, *ante,* page 1361.

## IV.

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 2008, S166149.