Filed 6/15/16  P. v. Segura CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM JOSE SEGURA,<br><br>    Defendant and Appellant. | 2d Crim. No. B262218<br>(Super. Ct. No. GA084275-01)<br>(Los Angeles County) |

William Jose Segura appeals a judgment following conviction of second degree murder, gross vehicular manslaughter while intoxicated, and fleeing the scene of an accident, with specific findings of two prior convictions for driving under the influence, fleeing the scene of an accident, and infliction of great bodily injury.  (Pen. Code, §§ 187, subd. (a), 189, 191.5, subds. (a) & (d); Veh. Code, §§ 20001, subds. (a) & (c), 23152, subd. (b); Pen. Code, § 12022.7, subd. (a).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On January 31, 2005, February 15, 2007, July 13, 2010, and March 16, 2012, Segura pleaded nolo contendere to driving with a blood alcohol content of 0.08 percent or higher, or reckless driving while intoxicated, pursuant to Vehicle Code sections 23152, subdivision (b) and 23103.  Segura sometimes completed alcohol education programs that informed participants of the dangers and consequences of driving under the influence of

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

alcohol. The programs also warned that the death of another caused by a motorist driving under the influence of alcohol could result in a murder prosecution. In each of Segura's driving-under-the-influence prosecutions, the trial court informed and warned him that he could be charged with murder if he drove under the influence of alcohol and killed another person.

Specifically, Segura's 2007 conviction arose from an accident where he crashed into a concrete freeway barrier and destroyed his vehicle. Alcohol breath test results revealed that he had a blood alcohol level of 0.21 percent. When detained, Segura was too intoxicated to complete a field sobriety test. In a 2011 alcohol education program that Segura attended, he acknowledged that there were "huge consequences, life-changing, with respect to his drinking."

*Fatal Collision*

In the evening of September 16, 2011, Segura patronized a restaurant in Arcadia, consuming food and, eventually, six to eight "tall beer[s]." During the evening, the restaurant bartenders informed Segura that they would not continue to serve alcoholic beverages to him if he intended to drive. When Segura responded that he would return home by taxi, the bartenders continued to serve him alcohol.

Shortly after 9:00 p.m., Segura and several other patrons decided to visit the "100 and 1 Club." Segura stated, "I can drive." When a bartender informed Segura that he continued to receive alcoholic beverages because he stated that he would not drive, Segura responded, "Thank you, oh, my gosh."

Edwin Miller, a reserve police officer, patronized the Arcadia restaurant that evening and saw Segura drinking alcohol. Miller also drove to the 100 and 1 Club and saw Segura park there and leave the driver's side of his vehicle. Later, Miller saw Segura inside the club restroom; Segura was intoxicated, steadied himself by holding a hand rail, and "stumbled" past Miller as he left.

At approximately 11:00 p.m. that evening, Christopher Bright drove eastbound on Huntington Drive in Duarte. Segura drove a silver-colored Lexus sedan in front of Bright's vehicle. Segura drove erratically and slower than the speed limit. He

2

swerved between the two eastbound driving lanes, striking the curb and the center divider, causing "sparks [to] fly." Bright telephoned the police emergency dispatcher and reported Segura as a drunk driver.

Segura then increased his driving speed and more "dramatic[ally]" bounced between the center divider and the right-hand curb. When he reached the Myrtle Avenue intersection, he "screech[ed]" to a stop in the middle of the intersection but then rapidly accelerated against the red traffic signal.

Motorist Erik Castrellon saw Segura driving at a high rate of speed and swerving between lanes on Huntington Drive. Castrellon telephoned the police emergency dispatcher and reported that Segura was "going to kill someone" and that the police "need to be out here quick."

As Segura drove through a red traffic signal at the intersection of Huntington Drive and Mountain Avenue, he accelerated and struck the rear of a suburban utility vehicle ("SUV"), propelling it over the sidewalk and into a tree. The SUV, driven by Lisa Marie Mireles Funes, was "wrapped around" and "crunched" into the tree.

"[L]ike a boomerang," Segura's sedan then struck the center divider, tipped over, knocked down several lamp posts, and stopped. Segura left the driver's side of the vehicle and lay down on the curb. He then arose, looked at Funes's vehicle, and walked quickly to the intersection of Huntington Drive and Buena Vista Street before sprinting north along Buena Vista Street. An onlooker shouted, "Wait a minute, where are you going?"

Firefighters responded to the accident and employed hydraulic tools to free Funes's lifeless body from the SUV. Inside the Lexus sedan, Sheriff's Deputy Ricardo Rangel found employment identification bearing Segura's name, address, and photograph. Rangel also learned that Segura's mother was the registered owner of the sedan.

Rangel then drove to the residential address stated on the Lexus sedan registration and found Segura asleep in the bedroom. Segura had several minor injuries -- cuts and a swelling over his right eye -- and blood on his clothing. Segura's eyes were

3

watery and bloodshot, he imparted an odor of alcohol, and his speech was slurred. The keys to the Lexus sedan were in his possession.

Two witnesses to the collision were taken to Segura's residence where they identified him as the driver of the Lexus sedan. Segura stated: "I fucked up. Let's get this shit over with." In a later police interview, Segura admitted that he had been drinking and driving with a suspended driver's license, but denied that he was involved in an accident.

Hospital laboratory tests performed that evening revealed Segura had a blood alcohol content of 0.28 percent. At the hospital, Segura stated: "I shouldn't be drinking and driving. Shit."

A later analysis performed on the event data recorder inside the Lexus sedan revealed that Segura had been travelling 63.4 miles per hour at the time of the collision.

Deputy Medical Examiner Ogbonna Chinwah performed an autopsy on Funes's body and opined that she died from blunt force trauma. Funes suffered many fatal injuries, including a "devastating" hinge fracture of her skull. Chinwah confirmed that Funes "pretty much die[d] instantly" from the trauma.

At trial, the parties stipulated that the DNA found in a bloodstain on the airbag in the Lexus sedan matched Segura's DNA. The parties also stipulated that Segura was "the sole driver" of the Lexus sedan at the time of the collision.

Segura testified at trial that he suffers from panic attacks and began consuming excessive alcohol during his military service in the Persian Gulf. He stated that he was in denial regarding his alcoholism and did not take the alcohol education programs seriously. Segura also testified that he recalled patronizing the restaurant and drinking two containers of beer, but did not remember the accident.

The jury convicted Segura of second degree murder (count 1), gross vehicular manslaughter while intoxicated (count 2), and fleeing the scene of an accident (count 4). (§§ 187, subd. (a), 189, 191.5, subds. (a) & (d); Veh. Code, §§ 20001, subd. (a).) It also found that Segura suffered two prior convictions for driving under the influence, fled the scene of an accident following commission of count 2, and inflicted

4

great bodily injury during commission of count 4.  (Veh. Code, §§ 23152, subd. (b), 20001, subd. (c); § 12022.7, subd. (a).)

The trial court sentenced Segura to 20 years to life in prison, consisting of 15 years to life for the gross vehicular manslaughter conviction (count 2) and a consecutive five-year term for the enhancement of fleeing the scene of an accident.  (Veh. Code, § 20001, subd. (c).)  The court imposed a $10,000 restitution fine, a $10,000 parole revocation restitution fine (suspended), an $80 court security assessment, and a $60 criminal conviction assessment, and awarded Segura 1,228 days of presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)  The court imposed but stayed sentence for counts 1 and 4, pursuant to section 654.

Segura appeals and contends that the trial court erred by:  1) declining to instruct regarding unconsciousness, and 2) punishing him for inflicting great bodily injury pursuant to section 12022.7, subdivision (a).

*DISCUSSION*

*I.*

Segura argues that the trial court committed prejudicial error by refusing to instruct regarding unconsciousness.  (§ 26 ["All persons are capable of committing crimes except . . . . [p]ersons who committed the act charged without being conscious thereof"].)  He relies upon *People v. Ochoa* (1998) 19 Cal.4th 353, 423, holding that a killing committed by a person rendered unconscious through voluntary intoxication may be treated as involuntary manslaughter.  (*Ibid.* [applying section 26 and a previous version of section 22 to crimes Ochoa committed in 1987].)  Segura points to evidence that he drove erratically, did not apply the brakes prior to the collision, was barefoot and dazed when he left his vehicle, appeared groggy when arrested, and had no memory of many events that evening, including the accident.  He asserts that the absence of an unconsciousness instruction denied him the opportunity to present a complete defense and is prejudicial pursuant to any standard of review.

For several reasons, we reject Segura's contentions.

5

A trial court must instruct regarding involuntary manslaughter based upon unconsciousness when there is sufficient evidence that the defendant was unconscious due to involuntary intoxication. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 418; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1371-1372.) To constitute a defense, unconsciousness need not rise to the level of a coma or the inability to walk or perform manual movements. (*Halvorsen*, at p. 417.) It may exist where the subject physically acts but is not conscious of acting. (*Ibid.*)

An instruction regarding a lesser included offense must be given only if there is substantial evidence from which a jury could reasonably conclude that the defendant committed the lesser offense but not the greater. (*People v. Thomas* (2012) 53 Cal.4th 771, 813; *People v. Enraca* (2012) 53 Cal.4th 735, 758.) "Due process requires that the jury be instructed on a lesser included offense *only* when the evidence warrants such an instruction." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.) The existence of any evidence, regardless of its weakness, does not justify an instruction regarding a lesser included offense. (*People v. Moye* (2009) 47 Cal.4th 537, 553.) These rules also apply to the trial court's obligation to instruct regarding defenses. (*People v. Barton* (1995) 12 Cal.4th 186, 196.)

Here, there is no evidence the unconsciousness instruction applies. Segura consumed alcohol at a restaurant despite assuring the bartenders that he would return home in a taxi. He drove to the 100 and 1 Club and consumed additional alcohol. He then drove toward his home at an excessive speed. Following the collision, he fled, reflecting his consciousness of guilt. After his arrest, Segura admitted that he "shouldn't be drinking and driving," and that he "fucked up." This evidence reflects that Segura engaged in more than mere physical movement.

Sufficiency of evidence to support the instruction aside, 1995 statutory amendments to former section 22 (renumbered in 2012 as section 29.4) preclude defendant from relying on unconsciousness caused by his voluntary intoxication as a defense to implied malice murder. (*People v. Boyer* (2006) 38 Cal.4th 412, 469, fn. 40, [dictum that in view of statutory amendments to former section 22, voluntary intoxication to the point

6

of unconsciousness would not prevent conviction of murder based upon an implied malice theory]; *People v. Rios* (2013) 222 Cal.App.4th 542, 563 [Supreme Court dictum generally should be followed]; *People v. Carlson* (2011) 200 Cal.App.4th 695, 705.) Former section 22, subdivision (b) permitted evidence of voluntary intoxication as relevant to whether the defendant actually formed a specific intent or, when charged with murder, whether he premeditated, deliberated, or harbored *express* malice. (*Carlson*, at pp. 705-706A defendant who unlawfully kills without express malice due to voluntary intoxication can still act with implied malice, which voluntary intoxication cannot negate. (Former § 22, subd. (b).) To the extent that a defendant who is voluntarily intoxicated unlawfully kills with implied malice, he would be guilty of second degree murder. (*Carlson*, at p. 707.) "No reason exists to carve out an exception where a person drinks so much as to render him or her unconscious." (*Ibid.*)

II.

Segura contends that the trial court erred by imposing, and staying pursuant to section 654, a three-year great bodily injury enhancement for count 4, fleeing the scene of an accident. (§§ 12022.7, subd. (a); Veh. Code, § 20001, subd. (a).) He reasons that he did not cause or aggravate Funes's injuries by fleeing because she "pretty much die[d] instantly," according to the medical examiner. Segura points out that section 12022.7, subdivision (a) requires the infliction of great bodily injury "in the commission of a felony." He relies upon *People v. Valdez* (2010) 189 Cal.App.4th 82, 90, to assert that the great bodily injury must have been inflicted during commission of the Vehicle Code section 20001 felony, and not the prior criminal or noncriminal act.

Vehicle Code section 20001, subdivision (a) provides: "The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and [present identification and render reasonable assistance]." The gravamen of this offense is not the initial injury to the victim, but leaving the scene of an accident without presenting identification or rendering aid. (*People v. Valdez, supra*, 189

7

Cal.App.4th 82, 88-90 [discussing well-settled rule that Vehicle Code section 20001 punishes the running, not the hitting].)

A great bodily injury allegation may attach to Vehicle Code section 20001, however, if the victim's injury was caused or aggravated by a defendant's failure to stop and render aid. (*People v. Valdez*, *supra*, 189 Cal.App.4th 82, 90.) One purpose of section 20001 is to prevent further injuries, or to save a life. (*Ibid.*) This important societal interest especially applies where the victim's injuries are catastrophic or ultimately fatal.

Here the medical examiner stated that Funes died "pretty much" instantly. That statement does not preclude the possibility that Funes lived for minutes following the collision. Yet her welfare was of no concern to Segura; he saw the SUV "wrapped around" a tree and then ran away from the collision. Acceptance of Segura's argument would create the absurd situation where a defendant fleeing an accident in which the victim dies is not liable for a great bodily injury enhancement, but a defendant fleeing an accident in which the victim suffers slight or moderate injuries is liable. The law does not countenance such absurdity. (*People v. Cook* (2015) 60 Cal.4th 922, 927.)

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Jared D. Moses, Judge

Superior Court County of Los Angeles

_____

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.