Filed 10/25/24  P. v. Hernandez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANUEL EDWARD HERNANDEZ III,<br><br>    Defendant and Appellant. | B325783<br><br>(Los Angeles County<br>Super. Ct. No. VA150709) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.
        Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.
        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

——————————————

A jury convicted Manuel Edward Hernandez III of second degree murder.  On appeal, Hernandez argues the court erred by refusing to instruct the jury on heat of passion voluntary manslaughter.  He also contends the court abused its sentencing discretion by not dismissing two enhancements pursuant to Penal Code section 1385.[1]  We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Prosecution Evidence*

One afternoon in May 2019, Hernandez went car shopping with his girlfriend.  She bought a black Dodge Charger with non-standard 20-inch chrome wheels.  The dealer taped a temporary registration in the upper right corner of the front windshield.  Hernandez drove the car off the lot at 3:00 or 4:00 p.m.  His girlfriend left in a different vehicle.

That evening, Hector Hernandez (Hector)[2] was standing on a sidewalk on Maywood Avenue smoking marijuana.  A car stopped near Hector.  Hernandez was driving the car.  The passenger, who Hector did not recognize, was holding a gun.  The passenger asked Hector where he was from.  Hector thought the passenger would have shot him, but Hernandez recognized Hector and saved his life.

According to Hector, Hernandez and the passenger briefly spoke.  They got out of the car and walked toward a man, Gabriel Genera, who was walking his dog nearby.  Hernandez and the

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    Because Hector Hernandez shares a last name with Hernandez, we refer to him as Hector to avoid confusion.  No disrespect is intended.

passenger asked, "where you from?"  Genera responded, " 'I don't give a fuck where you foos [*sic*] from . . . .' "  Hector heard five or six gunshots and hid behind a tree.  Genera was shot four times and killed.  Hector did not see who shot Genera.

Police officers obtained recordings from video cameras mounted on buildings nearby.  The footage showed Hernandez step out of the driver's seat of a Dodge Charger and shoot a firearm at Genera, who fell to the ground.  Hernandez drove away.  The video recordings also depicted Hector standing near the scene of the crime.  Police officers later showed some of the footage to Hector, who identified Hernandez holding a gun.

Huntington Park Police Officer David Ceja received a report that a murder suspect had been driving a black Dodge Charger with chrome wheels and a registration or sales permit taped to its windshield.  Officer Ceja also viewed a video depicting the suspect, who had a distinctive hairstyle, and the Charger.  The day after Genera was killed, Officer Ceja spotted a vehicle matching the description of the Charger.  The driver looked like the murder suspect.  Officer Ceja arrested the driver, Hernandez.

Hernandez had tattoos associated with the Maywood Locos, and several photographs introduced at trial showed him making Maywood Locos gang signs.

### Defense Evidence

Hernandez testified in his defense.  He admitted that he was a Maywood Locos gang member.

After he acquired the Charger, Hernandez went home to retrieve a gun, because "you never know" and for "safety."  He then hung out at a warehouse with some friends.  At some point, Hernandez and a friend left to buy beer at a liquor store on

3

Maywood Avenue.  They parked the Charger down the street from the store.  Hector was standing nearby.  Hernandez recognized Hector and asked him to watch the Charger while Hernandez went to the liquor store.

As Hernandez and his friend walked toward the liquor store, Hernandez saw Genera walking a dog and smoking a cigarette across the street.  Genera did not look like a gang member.  From across the street, Hernandez asked Genera for a cigarette.  Genera yelled, " 'This is my hood.  Why don't you come here – why don't you bring your bitch ass over here so I can lay your ass down.' "  One of Genera's hands was on the dog's leash, and his other hand was around chest level.  Hernandez did not see anything in Genera's hands, and he never saw a weapon.  Hernandez believed Genera made "some fast movements with his hands" at some point during the interaction.  Hernandez went into "defense mode."  Hernandez was "scared" and "shocked" by Genera's "aggression."  By this point, Hernandez thought Genera was a gang member.  He thought his life was in danger, as well as his friend's life.  He wanted to defend himself and the friend.  The friend, who did not appear to be scared, approached Genera.  At the same time, Hernandez pointed his gun at Genera and, from across the street, shot at Genera six times.  Hernandez drove away immediately because he "wasn't supposed to have a gun."

*Trial*

The People charged Hernandez with willful, deliberate, and premeditated murder (§ 187, subd. (a)) and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  As to the murder charge, the information alleged that Hernandez personally used, intentionally discharged, and proximately caused death or

4

serious injury with a firearm.  (§ 12022.53, subds. (b), (c), (d).)  It also alleged that Hernandez had two prior convictions for serious and/or violent felonies (§§ 667, subd. (d), 1170.12, subd. (b)), and a prior violent felony conviction (§ 667, subd. (a)(1)).  In addition, as to both counts, the information alleged three aggravating factors:  the offenses involved great violence or bodily harm, Hernandez was armed with and used a weapon, and the crimes indicate Hernandez is a serious danger to society.  (Cal. Rules of Court, rule 4.421(a)(1) & (2), (b)(1).)[3]

The court instructed the jury on both reasonable and imperfect self-defense or defense of another.  The court denied Hernandez's request for a heat of passion voluntary manslaughter instruction, reasoning that Genera's conduct would not "cloud the judgment of a normal person."

The jury convicted Hernandez on both charges, and found true the firearm allegations and the factors in aggravation.  The trial court later found true that Hernandez had been convicted of a prior strike within the meaning of the Three Strikes law (§ 667, subd. (e)(2)(A)), based on a 2014 conviction for shooting at an occupied motor vehicle.[4]

### *Sentencing*

In their sentencing memorandum, the People urged the court to impose a sentence of 63 years to life.  The People noted that the jury found true three aggravating circumstances:  "The

---

[3]     Before trial, the court struck allegations that the crimes were committed in association with a street gang (§ 186.22, subd. (b)(1)(C)) and that the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)).

[4]     The People elected to prove just one of two alleged prior strikes.

5

crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness;" Hernandez "was armed with or used a weapon" in committing the crime; and Hernandez "engaged in violent conduct that indicates a serious danger to society." (Cal. Rules of Court, rule 4.421(a)(1) & (2), (b)(1).) The People also submitted evidence of four additional aggravating circumstances: Hernandez's convictions were "numerous or of increasing seriousness," he served a prior prison term, he was on probation when he murdered Genera, and his historical performance on probation was "unsatisfactory." (*Id.,* rule 4.421(b)(2)–(5).) The People argued that the evidence did not support any of the mitigating circumstances in California Rules of Court, rule 4.423(a).

Hernandez's sentencing memorandum asked the court to strike the prior felony conviction allegation under *Romero*[5], stay the firearm enhancement or strike it and impose a lesser uncharged firearm enhancement, and stay the five-year prior enhancement.

Hernandez also submitted a mitigation memorandum. It explained that Hernandez's mother used drugs during her pregnancy and was addicted to crack. When Hernandez was two or three years old, his father took full physical custody of him, but his father "struggled with alcohol" and "did not provide the love and bond" that Hernandez needed. Both parents were arrested several times during Hernandez's childhood. When Hernandez was two years old, his older brother was shot and killed in his presence. Hernandez's grandmother cared for him when his father was in jail or otherwise unavailable, but she died

_____

[5]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

when Hernandez was 13. Hernandez was often left home alone, and he began using marijuana and heavier drugs including meth. He lived in a high-crime area. He was shot when he was 15, again when he was 16, and once more at a later age. Hernandez's childhood best friend and two other friends were shot and killed when he was 17, and ten other friends were shot to death after he turned 18.

At the sentencing hearing, Genera's family provided victim impact statements. Genera's widow and two of his sons expressed frustration that Hernandez laughed or smiled when one of the sons cried during the trial or sentencing.

The court recognized its discretion to strike a prior strike under *Romero*, as well as "a newly granted authority to strike both the firearm allegation and the 667(a) prior allegation as they are – they've been found true either by the court or by the jury." The court explained it had "thoroughly" read the parties' sentencing memoranda, Hernandez's *Romero* motion, Hernandez's mitigation memorandum, and all supporting documents, declarations, and letters. The court acknowledged Hernandez's "very tragic and unfortunate childhood." It also recognized that he had "a loving and supportive family." The court was "shocked" that Hernandez "let things happen this way." It described the crime as "an extremely callous, gang-motivated, unprovoked murder." According to the court, the evidence demonstrated that the victim did not want to "gang bang," and simply had the misfortune of choosing to walk his dog and smoke a cigarette at the same time that Hernandez and "one of his homeboys [were] searching for someone to assault and/or kill."

7

The court declined to exercise its discretion to strike Hernandez's prior strike conviction. It imposed an aggregate sentence of 60 years to life, consisting of 15 years to life for second degree murder, doubled to 30 years based on Hernandez's prior strike; a firearm enhancement of 25 years to life; and a five-year enhancement for a prior serious felony under section 667, subdivision (a)(1). The court imposed a concurrent two-year sentence for the felon in possession of a firearm charge. The court invited Hernandez's trial counsel to present argument during the sentencing hearing, but his counsel declined and did not object to the sentence imposed.

Hernandez timely appealed.

## DISCUSSION

### I. The Trial Court Did Not Err in Declining to Instruct the Jury on Heat of Passion Voluntary Manslaughter

Hernandez argues the trial court erred by failing to instruct the jurors on heat of passion voluntary manslaughter. We find no error.

#### a. *Legal framework and standard of review*

" 'In criminal cases, even absent a request, the trial court must instruct on general principles of law relevant to the issues raised by the evidence. [Citation.] This obligation includes giving instructions on lesser included offenses when the evidence raises a question whether all the elements of the charged offense were present . . . .' " (*People v. Moye* (2009) 47 Cal.4th 537, 548 (*Moye*).) However, the trial court is not required to instruct the jury on a lesser included offense when it is not supported by substantial evidence. (*Id.* at p. 553.)

"Second degree murder is an unlawful killing with malice aforethought, but without the premeditation or deliberation

8

required for first degree murder." (*In re Ferrell* (2023) 14 Cal.5th 593, 600.) A defendant lacks malice when the defendant kills "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) Heat of passion therefore reduces "an intentional, unlawful killing from murder to voluntary manslaughter by *negating the element of malice* that *otherwise inheres* in such a homicide," and this form of voluntary manslaughter "is considered a lesser necessarily included offense of intentional murder." (*Moye, supra*, 47 Cal.4th at p. 549.)

"A heat of passion theory of manslaughter has both an objective and a subjective component." (*Moye, supra*, 47 Cal.4th at p. 549.) The objective component requires that the victim engaged in some conduct, whether physical or verbal, "sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*Id*. at p. 550.) "To be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection." (*People v. Beltran* (2013) 56 Cal.4th 935, 949 (*Beltran*).) "To satisfy the subjective element of this form of voluntary manslaughter, the accused must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation. [Citation.] 'Heat of passion arises when "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." [Citations.]' " (*Moye*, at p. 550.)

"[W]hether the trial court should have given a particular jury instruction involves a mixed question of law and fact which

9

is ' "predominantly legal," ' " and therefore "we review de novo whether the specific instruction was required" (*People v. Sorden* (2021) 65 Cal.App.5th 582, 615), and we review the evidence in the light most favorable to the defendant (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5).

### b. Analysis

Viewing the evidence in the light most favorable to Hernandez, we conclude a heat of passion instruction was not supported by substantial evidence.

The objective component of heat of passion "focuses upon whether the person of average disposition would be induced to react from passion and not from judgment." (*Beltran, supra*, 56 Cal.4th at p. 939.) Here, after Hernandez asked Genera for a cigarette, Genera yelled: " 'This is my hood. Why don't you come here – why don't you bring your bitch ass over here so I can lay your ass down.' " However, " 'belligerent behavior' " or "insults" alone do not "induce sufficient provocation in an *ordinary* person to merit an instruction on voluntary manslaughter." (*People v. Enraca* (2012) 53 Cal.4th 735, 759 (*Enraca*); *People v. Manriquez* (2005) 37 Cal.4th 547, 585–586 [calling defendant " 'a mother fucker' " and "asking defendant whether he had a gun and daring him to use it" was not objectively provocative]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 827 [cursing was not sufficiently objective provocation].) According to Hernandez, Genera also made some fast movements with his hands. Yet, Hernandez never saw a weapon, and Genera remained across the street from him during the entire interaction. Genera's fast hand movements, even when combined with a verbal threat or insult, are not substantial evidence of objective provocation. (Compare *People v. Dominguez* (2021) 66 Cal.App.5th 163, 168, 175–179 [substantial evidence of

objective provocation existed where a gang member standing eight feet away from the defendants said " 'Where the fuck you from? . . . This is Eastside,' and lunged at [defendants] while reaching for an apparent weapon in his waistband"].)

Hernandez argues that Genera's actions were objectively provocative because he thought Genera was a gang member. However, " ' "no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man." ' " (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1143–1144.) Hernandez's subjective beliefs about Genera are therefore irrelevant to this analysis. Objectively, Hernandez described Genera as appearing to be a "regular person," with no gang tattoos, no shaved head, and no clothing suggesting he was a gang member. Hernandez also claims Genera appeared to be a gang member because he responded aggressively to a request for a cigarette. Yet, he fails to explain how this aggression would cause a reasonable person to identify Genera as a gang member, as opposed to an agitable or unstable individual. And even if a reasonable person would identify Genera as a gang member, this would not "provoke an ordinarily reasonable person." (*People v. Avila* (2009) 46 Cal.4th 680, 706 [perceived gang challenge was not sufficient to provoke a reasonable person]; *Enraca, supra*, 53 Cal.4th at p. 759 ["gang-related challenges" are not sufficiently provocative to require a heat of passion instruction].)

Moreover, even if Genera's conduct had been objectively provocative, the evidence demonstrates Hernandez was not "actually, subjectively, under the influence of a 'strong passion' "

11

when he killed Genera.[6] (*Moye, supra,* 47 Cal.4th at p. 552.) After Genera yelled at Hernandez, Hernandez's first thought was "defense mode." He thought his and his friend's lives were in danger, and he decided to defend himself. After Hernandez killed Genera, he remained collected enough to realize he "wasn't supposed to have a gun" and fled the scene. "In short, the thrust of defendant's testimony below was self-defense," and according to his own testimony, he responded to a perceived threat with deliberation and reasoned judgment. (*Id.* at p. 554.) "[N]o principle of law required the trial judge below to disregard the evidence in order to find that the jury should consider whether defendant subjectively killed in the heat of passion, when no substantial evidence supported that theory of manslaughter, and the evidence actually introduced on the point—the defendant's own testimony—was to the contrary." (*Ibid.*; compare *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1134 [heat of passion instruction required where defendant "panicked" and "felt 'a rush of anxiety and adrenaline' " before "instinctively" shooting victim].)

Insufficient evidence supported a heat of passion theory in this case, and therefore the trial court did not err in rejecting Hernandez's request.

---

[6] Hernandez appears to argue that his "subjective state of mind" is irrelevant to our analysis, citing *People v. Lee* (1999) 20 Cal.4th 47, 59. However, as our high court later clarified, the heat of passion theory requires that the defendant was "actually, subjectively, under the influence of a 'strong passion' " when the killing occurred. (*Moye, supra,* 47 Cal.4th at p. 552.)

## II. Hernandez Has Not Established That the Trial Court Abused Its Sentencing Discretion Under Section 1385, Subdivision (c)

Hernandez also argues that the trial court abused its discretion by declining to dismiss two sentencing enhancements based on section 1385, subdivision (c). We find no abuse of discretion.[7]

### a. Legal framework and standard of review

Effective January 1, 2022—more than ten months before Hernandez was sentenced—our Legislature passed and our Governor signed Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), which amended section 1385 to provide trial courts with guidance in exercising their discretion to dismiss

---

[7] As an initial matter, Hernandez failed to raise this claim below. Hernandez's opening brief claims that his sentencing memorandum raised arguments as to the four section 1385, subdivision (c) mitigating circumstances identified on appeal, and the People's brief repeats this assertion. However, the record contradicts this claim. Hernandez's sentencing memorandum asked the court to strike the prior strike allegation under *Romero* and section 1385, subdivision (a). It also asked the court to stay the firearm enhancement and the five-year prior violent felony enhancement, and to strike the firearm enhancement and impose a lesser uncharged enhancement under section 12022.53. But Hernandez never asked the court to dismiss any enhancement pursuant to section 1385, subdivision (c), nor did he object to the sentence ultimately imposed. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–376 (*Carmony*) [defendant's failure to invite the court to dismiss under § 1385 forfeits the issue on appeal].) However, even if Hernandez forfeited this claim, we exercise our discretion to consider his arguments. (See § 1259.)

13

sentencing enhancements. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 723–724 (*Coleman*).)

Section 1385, subdivision (c) now instructs the trial court to "dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." It further requires the court to "consider and afford great weight" to evidence of mitigating circumstances, and instructs that "the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Four mitigating circumstances are relevant here: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed. [¶] . . . [¶] (E) The current offense is connected to prior victimization or childhood trauma. [¶] . . . [¶] (H) The enhancement is based on a prior conviction that is over five years old." (*Id.*, subd. (c)(2)(B), (C), (E) & (H).)

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, superseded by statute on another ground as stated in *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1132.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Sandoval*, at p. 847.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the

14

wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.)

The appellant's burden is to "affirmatively demonstrate[]" that the trial court misunderstood its sentencing discretion. (*Coleman, supra,* 98 Cal.App.5th at p. 724.) Therefore, "in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 (*Gutierrez*).) " ' "In the absence of . . . a showing [that the court misunderstood the law or its discretion], the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Carmony, supra,* 33 Cal.4th at pp. 376–377.)

### b. *Hernandez has not established that the trial court abused its discretion*

Hernandez first argues that the court failed to greatly weigh his childhood trauma. (§ 1385, subd. (c)(2)(E).) However, he fails to identify any evidence in the record to support that the court minimized or ignored that circumstance. Indeed, contrary to Hernandez's contentions, his trial counsel submitted a mitigation memorandum describing, at length, the violence and trauma Hernandez experienced as a child. The court "thoroughly" read that memorandum and all supporting materials, and found that Hernandez had a "very tragic and unfortunate childhood." We presume the court understood and

acted within its discretion, absent a showing to the contrary. (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377.)

Hernandez claims the court also failed to greatly weigh three other mitigating circumstances:  That the sentence imposed was based on multiple enhancements, including one enhancement based on a prior strike that occurred more than five years before Hernandez murdered Genera; and that the aggregate sentence exceeded 20 years.  (§ 1385, subd. (c)(2)(B), (C) & (H).)[8]  Although the court did not describe these as mitigating circumstances or expressly state that it greatly weighed them, Hernandez again fails to identify anything in the record suggesting the court misunderstood or otherwise abused its discretion.  Hernandez's "citation to a silent record is insufficient to meet his burden" on this point.  (*Coleman*, *supra*, 98 Cal.App.5th at p. 725.)

Hernandez also contends that the trial court was required to dismiss one or both enhancements in this case, because section 1385, subdivision (c)(2)(B) and (C) state that enhancements "shall be dismissed" when multiple enhancements exist or when applying an enhancement could result in a sentence of over 20

---

[8]    We note that Hernandez failed to present any reasoned argument that applying the enhancements in this case "could result in a sentence of over 20 years."  (§ 1385, subd. (c)(2)(C).)  Hernandez was sentenced to 30 years to life based on his second degree murder conviction and the Three Strikes law.  Thus, before any enhancements were applied, his sentence exceeded 20 years.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 243 ["the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense"].)  However, even assuming this subdivision applies, Hernandez has not established any abuse of discretion.

years.  However, as Hernandez concedes, several Courts of Appeal have rejected this argument—indeed, Hernandez has not identified a single case that has accepted his position.  (*People v. Cota* (2023) 97 Cal.App.5th 318, 335; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1284; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–296; *People v. Anderson* (2023) 88 Cal.App.5th 233, 239 (*Anderson*).)

As the *Anderson* court explained, "the statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.)  In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice." (*Anderson*, *supra*, 88 Cal.App.5th at p. 239.)  Moreover, the statute provides that "proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety.  ([§ 1385,] subd. (c)(2).)  This language, taken together, explicitly and unambiguously establishes:  the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Ibid*.)  We agree with and adopt the *Anderson* court's reasoning.  The trial court was not obligated to dismiss any enhancement; rather, it retained discretion to do so within the parameters set out in section 1385, subdivision (c).

Relatedly, Hernandez argues that whenever any section 1385, subdivision (c)(2) mitigating circumstance exists, the statute "creates a presumption that enhancements will be dismissed unless that dismissal will endanger public safety."  He

contends the court did not comply with this presumption. However, our Supreme Court recently rejected this interpretation, concluding that the statute "does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*).)  "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement.  But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' "  (*Id*. at p. 1036.)

Here, the court found that the evidence demonstrated Hernandez was "searching for someone to assault and/or kill" on the day he murdered Genera, and that the murder was "extremely callous, gang-motivated, [and] unprovoked."  And the jury found true that the crimes "involved great violence [and] great bodily harm" and "disclos[ed] a high degree of cruelty, viciousness, or callousness," and that Hernandez "engaged in violent conduct that indicates a serious danger to society." (Cal. Rules of Court, rule 4.421(a)(1), (b)(2).)  Thus, the record strongly reflects that the court found that dismissal of any enhancements would endanger public safety.  In light of that finding, " 'it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any

18

mitigating factors identified in subdivision (c)(2)." (*Walker*, *supra*, 16 Cal.5th at p. 1033.)

Hernandez argues that the court "did not make a public safety assessment." While the court did not use those precise words, Hernandez fails to identify any legal authority requiring the court to use the terminology of the statute. Moreover, even if the court's statements on the record did not equate to a finding that dismissal would endanger public safety, its decision to not dismiss the enhancements necessarily implies such a finding, and that finding is well supported by the record. (See *People v. Calhoun* (1983) 141 Cal.App.3d 117, 126 [a court's sentencing decision implies requisite subsidiary findings].)

Finally, even if the court did not find that dismissal would endanger public safety, its statements at sentencing focused almost exclusively on the aggravating circumstances described above. The court therefore appeared to find that these circumstances, which are based on "substantial, credible evidence," neutralized any mitigating circumstances such that dismissal was not in the interest of justice. (*Walker*, *supra*, 16 Cal.5th 1024.)

Because "the record does not establish on its face" that the trial court misunderstood or improperly exercised its sentencing discretion, we cannot conclude the court abused that discretion. (*Gutierrez*, *supra*, 174 Cal.App.4th at p. 527.)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BERSHON, J.*


We concur:


EDMON, P. J.


EGERTON, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.