Filed 9/2/25

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLINT ALI PARKER,<br><br>Defendant and Appellant. | C098819<br><br>(Super. Ct. No. 19FE000001) |

APPEAL from a judgment of the Superior Court of Sacramento County, Matthew J. Gary, Judge. Affirmed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Charlotte Woodfork, Deputy Attorneys General, for Plaintiff and Respondent.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

A jury found defendant Clint Ali Parker guilty of second degree murder for the fatal beating of his girlfriend. On appeal, defendant argues that the trial court erred in responding to a question from the deliberating jury regarding how intoxication relates to the heat of passion theory of voluntary manslaughter. Specifically, defendant argues that the trial court erred by (1) responding to the jury using the language of the applicable statute (Pen. Code,[1] § 29.4) rather than giving the standard instruction on voluntary intoxication (CALCRIM No. 625), and (2) failing to provide a pinpoint instruction explaining how intoxication relates to the subjective and objective components of heat of passion manslaughter. Finding no error, we affirm.

BACKGROUND FACTS AND PROCEDURE

Defendant and the victim, Megan Carling-Smith (Megan) met and began dating in 2014 or 2015. They moved into an apartment together in July 2015. In 2018, they made plans to get married. That same year, Megan began looking to buy a home where they could live together. In October 2018, Megan's offer on a home was accepted, with the closing date set for late November.

In the early afternoon of November 20, 2018, Megan left the apartment to sign escrow closing papers. Megan asked defendant to accompany her, but he chose to stay home. When Megan returned to the apartment, around 4:00 p.m., defendant was intoxicated. Defendant testified that he had started drinking a little after noon. He drank two pints of liquor, smoked four or five marijuana joints, and consumed prescription pills (Xanax and Percocet) that he had gotten from a friend.

That evening, defendant and Megan argued about defendant's infidelity. Defendant testified that during the argument, Megan "kept pushing the issue" of his infidelity and "wouldn't let it go." They "just kept arguing and arguing about the same thing over and over." Eventually, he "kind of just snapped." In a "rage," he violently

---

[1] Undesignated section references are to the Penal Code.

beat Megan, repeatedly hitting her in the face and body and strangling her, until she was unconscious.

Defendant admitted that Megan did not have any weapons, did not threaten him, and did not use any force against him. He did not remember any particular words that Megan said to trigger him: "We were just arguing." When asked why he reacted as he did, defendant responded, "I don't know. I wasn't thinking clearly at all." "I think it was just the pushing of the issue." He recalled that Megan did not say anything to him during the attack and that she did not fight back.

After Megan stopped moving, defendant moved her to the bedroom. She was not responsive, and defendant was scared. At some point, he tried to perform CPR, but "[i]t didn't really work well." At 3:48 a.m., defendant searched on the Internet for "how to tell if somebody is actually dead." Around 7:10 a.m., he searched for "how to check for a pulse." Around 8:05 a.m., defendant called 911. Defendant lied to the dispatcher and said that Megan had been injured in a car accident the night before and that he had found her unresponsive upon waking that morning.

When paramedic firefighters arrived, they found Megan's body on the floor of the apartment. She had bruising, swelling, and trauma to her face. She had no pulse, her skin was cold, and rigor mortis had set in. She was pronounced dead at 8:11 a.m. Defendant told firefighters the same lie about a car accident the night before. Defendant did not appear to be intoxicated at that time. He had no visible injuries.

Due to the suspicious circumstances of the death, the sheriff's department was called to investigate. In three interviews with detectives (two on November 21 and one on November 30), defendant repeated the same lie about a car accident.

The autopsy of Megan identified two contributing causes of death: brain bleeding caused by blunt force trauma and manual strangulation (neck compression). There were no signs of drugs or alcohol in Megan's body.

3

The district attorney filed a one-count information charging defendant with Megan's murder (§ 187, subd. (a)).  After the trial, the jury found defendant not guilty of first degree murder, but guilty of second degree murder.  On June 8, 2023, the trial court sentenced defendant to an indeterminate term of 15 years to life.  Defendant filed a timely notice of appeal.

DISCUSSION

I

*CALCRIM No. 625 and Section 29.4*

Defendant argues the trial court committed prejudicial error by denying his request for a CALCRIM No. 625 instruction on voluntary intoxication.  We disagree.

A.     *Applicable Legal Principles*

Murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought."  (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188.)  It is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature," i.e., an intent to kill unlawfully.  (§ 188, subd. (a)(1); *People v. Elmore* (2014) 59 Cal.4th 121, 132-133; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1384.)  It is implied "when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger."  (*Elmore*, at p. 133; § 188, subd. (a)(2).)

Murder may be either of the first or second degree.  (§ 189, subds. (a) & (b).)  The killing of a human being with express malice formed willfully, deliberately, and with premeditation constitutes first degree murder.  (*People v. Elmore*, *supra*, 59 Cal.4th at p. 133.)  Second degree murder is an unlawful killing with malice, but without the additional elements of willfulness, premeditation, and deliberation.  (*Ibid*.)

Voluntary manslaughter is a lesser included offense of murder.  (*People v. Elmore*, *supra*, 59 Cal.4th at p. 133.)  It applies when a defendant acts with an intent to kill or a conscious disregard for life (i.e., the malice aforethought element of murder), but other

4

circumstances relating to the defendant's mental state preclude the jury from finding that the defendant acted with malice aforethought. (*People v. Bryant* (2013) 56 Cal.4th 959, 967, 969-970; § 192, subd. (a).) California recognizes two circumstances that may preclude the formation of malice and reduce an unlawful killing from murder to manslaughter: heat of passion and unreasonable self-defense. (*Elmore*, at p. 133.) Only heat of passion is at issue here.

The heat of passion theory for manslaughter has both an objective and a subjective component. (*People v. Moye* (2009) 47 Cal.4th 537, 549.) To satisfy the subjective element, the accused must be shown to have killed while under " 'the actual influence of a strong passion.' " (*Id*. at p. 550.) The passion aroused need not be anger or rage but can be any intense emotion, other than revenge. (*People v. Breverman* (1998) 19 Cal.4th 142, 163, overruled in part on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.)

To satisfy the objective element, the accused's heat of passion must have been induced by sufficient provocation. (*People v. Moye, supra*, 47 Cal.4th at p. 549.) The provocative conduct need not be so extreme that it would prompt an ordinary person *to kill*. (*People v. Beltran* (2013) 56 Cal.4th 935, 949.) However, to be sufficient, the provocation must be such that it would cause an ordinary, sober person of average disposition to act rashly or without due deliberation and reflection. (*Moye*, at p. 550; *People v. Rangel* (2016) 62 Cal.4th 1192, 1225-1226 (*Rangel*); *People v. Dominguez* (2021) 66 Cal.App.5th 163, 176.) "A voluntary manslaughter instruction is unwarranted where the alleged provocation was no more than taunting words, a technical battery, a slight touching, or simple assault." (*People v. Odell* (2023) 92 Cal.App.5th 307, 318; accord, *People v. Gobert* (2023) 89 Cal.App.5th 676, 686 [a provocation of slight and trifling character, such as words of reproach, is not sufficient to arouse heat of passion in a reasonable person]; *People v. Najera* (2006) 138 Cal.App.4th 212, 226 [taunt not enough]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 826-827 [verbal argument, with

kicking and scratching, not enough]; see *People v. Marshall* (1996) 13 Cal.4th 799, 848-849 [finding no authority that the existence of marital problems, without more, warrants a heat of passion instruction].)

Section 29.4 addresses the admissibility of evidence of voluntary intoxication. Under the law, as it existed before 1995, the California Supreme Court held that evidence of voluntary intoxication was admissible to negate malice aforethought, regardless of whether such malice was express or implied. (*People v. Whitfield* (1994) 7 Cal.4th 437, 441, 446-448, superseded by statute as stated in *People v. Soto* (2018) 4 Cal.5th 968, 977 (*Soto*).) The next year, the Legislature amended section 22 (the predecessor to section 29.4) to provide: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored *express* malice aforethought." (§ 29.4, subd. (b), italics added; Stats. 1995, ch. 793 § 1; see Stats. 2012, ch. 162, § 119.) Cases have recognized that the Legislature amended the statute to abrogate *Whitfield* and prohibit evidence of voluntary intoxication to negate implied malice. (See, e.g., *People v. Turk*, *supra*, 164 Cal.App.4th at pp. 1374-1375; *People v. Carlson* (2011) 200 Cal.App.4th 695, 706.) As amended, when a defendant has been charged with murder, section 29.4 permits evidence of voluntary intoxication only in deciding whether the defendant acted with deliberation, premeditation, or with an intent to kill (express malice). (*Turk*, at pp. 1374-1375,1382; § 29.4, subd. (b).) Evidence of voluntary intoxication cannot be used to negate implied malice. (*Turk*, at p. 1375.)

B. *Additional Procedural Background*

Prior to deliberations, the trial court instructed the jury with CALCRIM Nos. 500 ("Homicide: General Principles"), 520 ("First or Second Degree Murder With Malice Aforethought"), 521 ("First Degree Murder"), 522 ("Provocation: Effect on Degree of

6

Murder") and 570 ("Voluntary Manslaughter: Heat of Passion—Lesser Included Offense").

Among other things, CALCRIM No. 520 informed the jury that, to be guilty of murder, the People must prove that defendant acted with malice aforethought, and it defined express and implied malice. The instruction told the jury that defendant acted with express malice if he "unlawfully intended to kill."

CALCRIM No. 521 defined first degree murder and explained the meaning of the terms "willfully," "deliberately," and "with premeditation." The instruction explained that a decision to kill was not deliberate and premeditated if it was made "rashly, impulsively, or without careful consideration."

CALCRIM No. 522 told the jury that "[p]rovocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide." The jury was instructed to consider provocation in relation to both whether the crime was first or second degree murder, and whether the defendant committed murder or manslaughter.

CALCRIM No. 570 instructed the jury that a killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed because of a sudden quarrel or in the heat of passion. In pertinent part, the jury was instructed that a murder may be reduced to voluntary manslaughter if: (1) the defendant "was provoked;" (2) "[a]s a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment;" and (3) "[t]he provocation would have caused a person of average disposition to act rashly or without due deliberation, that is, from passion rather than from judgment." Other parts of the instruction informed the jury that: "In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation," and that "[w]hile no specific type of provocation is required, slight or remote provocation is not sufficient." The jury was informed that "[t]he

7

defendant is not allowed to set up his own standard of conduct." The jury also was instructed that the prosecution has "the burden of proving beyond a reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the heat of passion," and if such burden is not met, the jury "must find the defendant not guilty of murder."

Neither party requested an instruction on voluntary intoxication (CALCRIM No. 625) during the jury instruction conference, and therefore, the court did not give one before deliberations.

The defense theory at trial was that defendant committed voluntary manslaughter, not murder. During closing arguments, defense counsel argued that defendant had been provoked by the argument about his infidelity. Defense counsel argued that this provocation, in combination with defendant's intoxication, caused defendant to "snap" and act rashly.

The prosecution argued that defendant's testimony regarding being provoked was not credible and that the evidence of provocation was insufficient to support the objective component required for heat of passion manslaughter. The prosecution argued that the jury should find defendant guilty of first degree murder because he killed Megan willfully, deliberately, and with premeditation.

On the third day of deliberations, the jury submitted a note asking the following questions: "Can someone still be held responsible if the person is under the influence during a 'heat of the moment' situation? Could they be excused for a 'heat of the moment' situation?"

Defense counsel asked the trial court to respond with the standard instruction on voluntary intoxication (CALCRIM No. 625). The court declined. Instead, the court provided the jury with the following response, guided by the language of section 29.4, subdivision (b): "Evidence of a person being 'under the influence' is relevant only as to whether the Defendant premeditated, deliberated, or harbored express malice afore thought [*sic*]."

8

C.    *Standard of Review*

After a jury retires to deliberate, section 1138 imposes upon the court a duty to help the jury understand the legal principles it is asked to apply.  (*People v. Franklin* (2018) 21 Cal.App.5th 881, 887; *People v. Beardslee* (1991) 53 Cal.3d 68, 97; § 1138.)  "This does not mean the court must always elaborate on the standard instructions.  Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information.  [Citation.]  Indeed, comments diverging from the standard are often risky.  [Citation.] . . .  But a court must do more than figuratively throw up its hands and tell the jury it cannot help.  It must at least *consider* how it can best aid the jury.  It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given."  (*Beardslee*, at p. 97.)

We apply the abuse of discretion standard to any decision by a trial court to instruct, or not to instruct, in the exercise of its supervision over a deliberating jury.  (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.)  However, "[w]e review de novo the legal accuracy of any supplemental instructions provided."  (*People v. Franklin*, *supra*, 21 Cal.App.5th at p. 887, fn. 4; see *People v. Posey* (2004) 32 Cal.4th 193, 218.)  In reviewing a claim that a court's instructions were incomplete or misleading, we must independently determine whether there is a reasonable likelihood that the jury construed or applied the challenged instructions in a manner contrary to law.  (*People v. Olivas* (2016) 248 Cal.App.4th 758, 772; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.)  In conducting our review, we consider the instructions as a whole and assume that the jurors are intelligent persons capable of understanding and correlating all jury instructions given.  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)  Instructions should be interpreted, if possible, to support the judgment, rather than defeat it, if they are reasonably susceptible to such interpretation.  (*Ibid*.)

D. *Analysis*

Defendant argues the trial court abused its discretion when it denied his request to respond to the jury's questions by instructing the jury with CALCRIM No. 625. Defendant acknowledges that "[the court's] response, like CALCRIM No. 625, closely tracks section 29.4 subdivision (b)," and "is a generally correct statement of the law." Nevertheless, defendant argues that the court's response misled the jury because "[i]ts syntax suggests—incorrectly—that intoxication can only contribute to the reduction of an offense from first to second degree murder, not from murder to voluntary manslaughter." In contrast, defendant argues, CALCRIM No. 625's syntax makes clear that voluntary intoxication can contribute to a reduction from murder to voluntary manslaughter by negating the "intent to kill."

The People do not contest whether defendant was entitled to an instruction on voluntary intoxication. Instead, the People argue there was no abuse of discretion because the trial court's response, guided by the language of section 29.4, provided a correct statement of law. Alternatively, they argue that any alleged error in failing to give the requested instruction was harmless.

We find no error. Even if we agree that it might have been preferable for the trial court to instruct the jury with CALCRIM No. 625, decisional authority establishes that the use of the Judicial Council-approved instructions is not mandatory. (*People v. Aranda* (2012) 55 Cal.4th 342, 354; *People v. Cornejo* (2016) 3 Cal.App.5th 36, 60.) A trial court's failure to use a standard instruction does not " 'amount to state law error when its substance is covered in other instructions given by the court.' " (*Cornejo*, at p. 60.) Such was true here.

The trial court's response to the jury explained that evidence of defendant being " 'under the influence' " (i.e., intoxicated) was relevant solely as to whether defendant premeditated, deliberated, or harbored express malice aforethought. Further, the court told the jury that murder required malice aforethought, which could be express or

10

implied, and instructed the jury that the defendant acted with express malice if he "unlawfully intended to kill." In addition, the court instructed the jury on the elements of first degree murder and told the jury that, unless defendant acted with premeditation and deliberation, he would be guilty of second degree murder, not first degree murder.

Collectively, the trial court's instructions properly instructed the jury that it could consider the evidence of defendant's voluntary intoxication only in deciding whether he acted with deliberation and premeditation or with an intent to kill. This is consistent with the language of CALCRIM No. 625, which, under the facts of this case, would have instructed the jury that: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill[,] [or] [the defendant acted with deliberation and premeditation[,]] . . . [¶] . . . [¶] You may not consider evidence of the defendant's voluntary intoxication for any other purpose." That instruction has been upheld as a correct statement of the law. (*People v. Turk*, *supra*, 164 Cal.App.4th at pp. 1381-1384.) Thus, considering the instructions as a whole, we conclude the trial court's instructions adequately informed the jury of how the evidence of defendant's intoxication could be used. (See *id*. at pp. 1381-1383; see also *People v. Adams* (2004) 124 Cal.App.4th 1486, 1493 [the language of a statute is generally an appropriate and desirable basis for an instruction].)

Defendant argues that the trial court's response was misleading because it suggested evidence of intoxication cannot contribute to a reduction from murder to voluntary manslaughter based on heat of passion. However, this argument relies on a misinterpretation of the law.

Under the current law, where murder is the relevant charge, evidence of voluntary intoxication is "admissible solely" on the issue of "whether the defendant premeditated, deliberated, or harbored express malice aforethought." (§ 29.4, subd. (b).) This reflects " ' "a legislative determination that, for reasons of public policy, evidence of voluntary

11

intoxication to negate culpability shall be strictly limited." ' " (*Soto*, *supra*, 4 Cal.5th at p. 981.)

In *Soto*, our Supreme Court considered whether section 29.4 and, in turn, CALCRIM No. 625, "correctly permit[] the jury to consider evidence of voluntary intoxication on the question of whether defendant intended to kill but not on the question of whether he believed he needed to act in self-defense." (*Soto*, *supra*, 4 Cal.5th at p. 970.) The defendant in that case had argued that "section 29.4 permits evidence of voluntary intoxication on the question of whether he actually believed in the need for self-defense, that is, whether he intended to kill *unlawfully*." (*Id*. at p. 975.) By giving CALCRIM No. 625, the defendant argued that the trial court erroneously prohibited the jury from considering evidence of voluntary intoxication with respect to his claim of unreasonable self-defense. (*Soto*, at pp. 973, 975.) The Supreme Court rejected this argument. (*Id*. at pp. 970, 976-978.)

Based on the language of section 29.4 and its legislative history, the Supreme Court reasoned that "it is clear what the Legislature intended to achieve when it amended former section 22 [section 29.4]: to prohibit voluntary intoxication from being an excuse for poor judgment when someone kills." (*Soto*, *supra*, 4 Cal.5th at p. 978.) "Unlike the mental state of intent to kill, a belief that it is necessary to kill in self-defense does not involve the ' "intent to do some further act or achieve some additional consequence." ' " (*Id*. at p. 977.) Rather, it involves "judgment," and the Legislature has determined as a matter of policy that an error in judgment should not be negated by voluntary intoxication. (*Id*. at pp. 977-978.) In effect, the Legislature has said, "If you voluntarily choose to become intoxicated and then kill someone, you may not claim that you were so intoxicated you were unaware your victim posed no threat to you when you killed." (*Id*. at pp. 978-979.) Thus, the Supreme Court held that evidence of voluntary intoxication is not admissible to show a defendant believed it was necessary to act in self-defense, even when the prosecution relies upon a theory of express malice. (*Id*. at pp. 970, 977-978;

12

accord, *People v. Suazo* (2023) 95 Cal.App.5th 681, 701-702; see also *Rangel*, *supra*, 62 Cal.4th at p. 1226 [voluntary intoxication does not negate express malice to reduce murder to involuntary manslaughter].)

The same rationale applies to the question of whether evidence of voluntary intoxication is admissible to show a defendant acted in the heat of passion.  Both unreasonable self-defense and heat of passion function to negate malice, and both reflect a defendant's failure in judgment.  Thus, under *Soto*, evidence of defendant's voluntary intoxication was not admissible to prove he acted in the heat of passion.

Moreover, it is undisputed that a subjective heat of passion will reduce a killing from murder to voluntary manslaughter only if there is also sufficient provocation. (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 709.)  Because the test of sufficient provocation is an objective one based upon an ordinary person of average disposition, the defendant's intoxication is irrelevant to this inquiry.  (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 83.)  The test is whether the victim's conduct was sufficiently provocative that it would cause an " 'an average, *sober* person' " to act rashly or without due deliberation and reflection.  (*Rangel*, *supra*, 62 Cal.4th at p. 1226, italics added; accord, *People v. Manriquez* (2005) 37 Cal.4th 547, 585; *People v. Lee* (1999) 20 Cal.4th 47, 60; *People v. Dominguez*, *supra*, 66 Cal.App.5th at p. 176; *Oropeza*, at p. 83.)  A defendant is not allowed to set up his own standard of conduct.  (CALCRIM No. 570.) Thus, a defendant's voluntary intoxication is irrelevant in determining whether the claimed provocation was sufficient.

For these reasons, we conclude the trial court did not abuse its discretion in its response to the jury.  The trial court correctly informed the jury that it could consider evidence of defendant's voluntary intoxication in deciding whether the defendant acted with an intent to kill or with deliberation and premeditation in connection with the charge of murder, but could not consider such evidence for any other purpose.

13

## II

### *Pinpoint Instruction on Intoxication and Heat of Passion*

Defendant also argues that the trial court erred in failing to give a pinpoint instruction explaining to the jury how voluntary intoxication relates to the subjective and objective components of heat of passion manslaughter. Defendant contends that the trial court should have explained that intoxication is relevant to heat of passion's subjective component and irrelevant to its objective component. The People respond that defendant forfeited this issue by failing to object below, that the claim lacks merit, and that any possible error was harmless.

We agree that defendant has forfeited this claim. "Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218.) Failure to object results in forfeiture of the claim on appeal. (*People v. Dykes* (2009) 46 Cal.4th 731, 802.)

Here, the trial court's instruction on voluntary manslaughter and the court's response to the jury were generally correct statements of the law. While defense counsel asked the court to advise the jury that "being under the influence can reduce murder to manslaughter," counsel did not ask for an instruction explaining how intoxication relates to the subjective and objective components of heat of passion. Thus, as defendant concedes, the claim is forfeited on appeal.

Even if not forfeited, any error would be harmless because the evidence of objective provocation was not sufficient to warrant the instruction for voluntary manslaughter. As defendant himself admitted, Megan did not have any weapons, did not threaten him, and did not use any force against him. Further, defendant could not remember any words that Megan may have said to cause him to "snap." The only evidence of provocation was that they were arguing and Megan "kept pushing" the issue of his infidelity and "wouldn't let it go." This was plainly not sufficient provocation to

14

cause an ordinary person of average disposition to act rashly and without due deliberation.  (See, e.g., *People v. Odell*, *supra*, 92 Cal.App.5th at p. 318; *People v. Gobert*, *supra*, 89 Cal.App.5th at p. 686; *People v. Gutierrez*, *supra*, 45 Cal.4th at pp. 826-827; *People v. Manriquez*, *supra*, 37 Cal.4th at pp. 585-586.)  Thus, the jurors presumably disregarded the heat of passion manslaughter theory because it was not applicable to the facts of the case, as they were instructed to do.  (See *People v. Frandsen* (2011) 196 Cal.App.4th 266, 278; *People v. Rollo* (1977) 20 Cal.3d 109, 122-123, superseded by statute on other grounds as stated in *People v. Olmedo* (1985) 167 Cal.App.3d 1085, 1096.)  Accordingly, any error related to the heat of passion instruction was harmless.

### III

### *Cumulative Error*

Defendant argues that even if we find the errors discussed above to be individually harmless, we should find cumulative prejudicial error.  Because we have found no error, there is no basis for a finding of cumulative error.  (*People v. Sorden* (2021) 65 Cal.App.5th 582, 618.)

## DISPOSITION

The judgment is affirmed.

_____\s\_____
Krause, J.

We concur:

_____\s\_____
Earl, P. J.

_____\s\_____
Mesiwala, J.